UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

▮▮▮▮▮▮▮▮

Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"

Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, ▮▮▮▮▮▮▮▮ ("Plaintiff"), by and through its undersigned counsel, introduces this complaint against Defendants, the individuals, partnerships, and unincorporated associations set forth on Schedule "A" hereto (collectively "Defendants" – which Schedule "A" will be filed as an exhibit under seal), who continue to promote, sell, and distribute goods bearing counterfeits and confusingly identical or similar imitations of Plaintiff's intellectual property within this district through various Internet-based e-commerce stores using the seller identities as set in the seller IDs ("Seller IDs"), and in support of its claims, alleges as follows:

### SUMMARY OF THE ACTION

1. Plaintiff brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.

1

## SUBJECT MATTER JURISDICTION

2. This court maintains original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

3. This court also maintains subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121.

4. Further, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

5. Defendants are subject to personal jurisdiction in this district because they intentionally direct their activities and conduct business with consumers across the United States, including in the state of Florida and this district. They do so through e-commerce platforms, including Amazon.com, Temu.com, Etsy.com, Alibaba.com, AliExpress.us, Wish.com, Ebay.com, Shein.com, and Walmart.com, which are accessible in Florida and operate under their Seller IDs.

6. Defendants are subject to personal jurisdiction in this district because Defendants directed their illegal activities to the forum state, causing Plaintiff injury in the forum. Plaintiff's claims in this complaint arise directly from those activities.

7. Defendants are subject to personal jurisdiction in this district under Federal Rule of Civil Procedure 4(k)(2) because (a) defendants are not subject to jurisdiction in any state court of general jurisdiction, and (b) exercising jurisdiction is consistent with the US Constitution and applicable US law.

## VENUE

8. Venue is proper in this court under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and are non-residents of the United States. Therefore, there is no district where an action may otherwise be brought.

9. Venue is proper in this court under 28 U.S.C. § 1391 because Defendants are, upon information and belief, aliens who engage in infringing activities, causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers in the district.

## JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER

10. Defendants are the individuals, partnerships, and unincorporated associations set forth on Schedule "A."

11. Defendants promote, sell, offer for sale, and distribute goods bearing counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district.

12. Joinder of all Defendants is allowed under the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2). This rule permits the inclusion of persons as Defendants in an action when any right to relief is claimed against them jointly, severally, or in the alternative, in relation to the same transaction, occurrence, or series of transactions or occurrences and when a common question of law or fact will arise for all Defendants in the action.

13. The court permits the joinder of the multiple defendants listed in Schedule "A" because the Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative, arising from the same transaction, occurrence, or series of transactions or occurrences, and common questions of law or fact will arise in the action. Joinder of the multiple defendants listed in Schedule "A" serves the interests of convenience and judicial economy, leading to a reasonable, timely, and less expensive resolution for Plaintiff, Defendants, and this Court.

14. Plaintiff's claims against the multiple Defendants listed in Schedule "A" are transactionally related. The Defendants, primarily non-citizens from China, engage in similar efforts to conceal their identities and follow similar patterns of infringement, stemming from identical or related transactions or occurrences, with common facts applicable to all Defendants.

## THE PLAINTIFF

15. Plaintiff is a company created under the laws of the United States of America.

███ Plaintiff is a company in the business of promoting and selling ████████ ████

17. Plaintiff's products are sold through authorized retailers.

18. Plaintiff offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

19. Plaintiff suffers continuous, daily, and sustained violations of its intellectual property rights due to counterfeiters and infringers, such as Defendants herein.

20. Plaintiff remains harmed, the consuming public remains confused, and the Defendants earn substantial profits due to their infringing conduct.

21. Plaintiff invested substantial resources, including legal and investigative fees, to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct.

22. The rise in online infringement has forced companies, like Plaintiff, to spend considerable time and money protecting consumers and themselves from the negative impacts of intellectual property infringement, such as consumer confusion and the weakening of Plaintiff's brand.

**PLAINTIFF'S TRADEMARK RIGHTS**

23. Plaintiff owns all rights in and to the trademark ████████ with Ser. No. ████████, which is valid and registered (Reg. No ████████) on the Principal Register of the United States Patent and Trademark Office (hereinafter, the "Plaintiff Mark" or "Mark").

███ The Mark is classified as a ██████ mark used in the manufacturing, sale, and distribution of high-quality ████████████████

25. Plaintiff continuously utilizes the Mark in interstate commerce to identify and

4

distinguish Plaintiff's high-quality ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

26. The Mark represents Plaintiff's quality, reputation, and goodwill and has never been abandoned.

27. The Plaintiff registered the Mark on ▮▮▮▮▮▮▮▮, and has used it in commerce since ▮▮▮▮▮▮▮▮. The Plaintiff has invested substantial time, money, and resources in developing, advertising, and promoting the Mark.

28. Further, Plaintiff extensively utilized, advertised, and promoted Mark in the United States and associated Mark with the sale of high-quality ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The Plaintiff invested significant funds in promoting the Plaintiff Mark and the products that feature it.

29. Due to Plaintiff's efforts, consumers easily recognize merchandise sold under Plaintiff Mark as high-quality ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ associated with Plaintiff. As a result, Plaintiff Mark acquired secondary meaning as an identifier of high-quality ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

30. Plaintiff carefully monitors the use of the Plaintiff Mark and has never assigned, authorized, or licensed the Plaintiff Mark to any Defendants.

31. Plaintiff extensively advertises and promotes genuine ▮▮▮▮▮▮▮▮▮ sold under the Plaintiff Mark through the Internet. The Plaintiff invests considerable funds in online marketing, including search engine optimization (SEO) strategies. These strategies enable the Plaintiff to effectively and legitimately inform consumers about the value associated with the Plaintiff's brand and the products offered under it.

## DEFENDANTS

32. Defendants may have an action filed against them, pursuant to Fed. R. of Civ. P. 17(b).

33. Defendants consist of individuals and/or business entities with an unclear composition. Based on available information, each Defendant either resides in or operates from foreign jurisdictions, redistributes products from the same or similar sources in those areas, and/or ships their

goods to shipping and fulfillment centers in the United States for redistribution.

34. Defendants continuously conduct business in Florida but have failed to appoint an agent for service of process. Upon information and belief, Defendants have registered, established, purchased, and maintained their Seller IDs. Under the Seller IDs, Defendants direct business activities toward consumers throughout the United States, including within this district.

35. Defendants have been both past and present critical players in the sale of products that bear counterfeits and infringements of Plaintiff's intellectual property rights, as outlined in this document, operating under at least the Seller IDs.

36. Defendants participate in unfair competition against the Plaintiff by advertising, offering, and selling goods that feature counterfeits and infringements of the Plaintiff's intellectual property rights to consumers in the United States and this district via e-commerce. They use at least the Seller IDs and additional names, websites, or seller identification aliases that remain unknown to the Plaintiff.

37. Defendants purposefully direct their illegal activities toward consumers in the State of Florida through advertising, offering to sell, selling, and/or shipping counterfeit and infringing goods into the State.

38. Defendants engage in unfair competition with the Plaintiff by advertising, selling, and offering goods that contain counterfeits and infringements of the Plaintiff's intellectual property rights to consumers in the United States and this district through e-commerce. They use at least the Seller IDs, as well as other names, websites, or seller identification aliases that the Plaintiff has not yet identified.

39. Upon information and belief, many Defendants registered and maintained their Seller IDs solely to engage in illegal counterfeiting activities.

40. Based on available information, Defendants will likely keep registering or obtaining new seller identification aliases to sell and offer counterfeits and infringements of the Plaintiff's intellectual

6

property rights unless they are preliminarily and permanently enjoined. They utilize their e-commerce businesses to violate the intellectual property rights of the Plaintiff and others.

41. Defendants rely on their business names, such as Seller IDs, payment accounts, and other alias seller identification names or e-commerce stores, to sell counterfeits and infringe upon Plaintiff's intellectual property rights. These Seller IDs play a crucial role in their online operations, serving as one of the many methods the Defendants employ to further their counterfeiting and infringement activities, causing harm to the Plaintiff.

42. The Defendants employ unique seller store names, product labels, and descriptive information that include one or more of the Plaintiff's names, titles, and content. This content is indexed by search engines, allowing it to compete directly with the Plaintiff for prominence in search results.

43. Defendants' individual seller store appearances through e-commerce in search engine results thwart Plaintiff's efforts to educate consumers about the value of products sold under Plaintiff.

44. Defendants leverage counterfeits and infringements of the Plaintiff's intellectual property rights to attract online consumer traffic to their individual seller stores operating under the Seller IDs. This practice enhances the value of their Seller IDs while diminishing the size and value of the Plaintiff's legitimate marketplace and intellectual property rights, all at the Plaintiff's expense.

45. By selling and offering counterfeit and infringing products, Defendants directly and unfairly undermine Plaintiff's economic interests in the state of Florida, resulting in harm and damage to Plaintiff within this jurisdiction.

46. Defendants' actions' inevitable and intended consequence consists of the degradation and destruction of the goodwill linked to Plaintiff's intellectual property rights and the dismantling of the legitimate market sector in which Plaintiff operates.

47. Upon information and belief, and always relevant hereto, Defendants maintained actual

and/or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights for commercial purposes.

## DEFENDANTS' INFRINGING ACTIVITIES

48. Defendants continue to promote, advertise, distribute, and sell copies (of lower quality) of Plaintiff's products in interstate commerce that constitute counterfeits and violate Plaintiff's intellectual property rights (the "Counterfeit Goods") through e-commerce operating under the Seller IDs.

49. Specifically, Defendants use the Plaintiff Mark, without authorization, to initially attract online customers and attract them to their marketplaces through e-commerce under Seller IDs.

50. Defendants use identical copies of Plaintiff Mark for goods of different quality.

51. Plaintiff made extensive and continuous use of the Mark before Defendants introduced counterfeit and confusingly similar imitations of Plaintiff's merchandise.

52. Based on information and belief, the quality of the Defendants' Counterfeit Goods is significantly inferior to that of the Plaintiff's authentic products. The Defendants intentionally use, promote, and advertise substantial quantities of their Counterfeit Goods, knowing that consumers will likely confuse them with the genuine high-quality and unique ▮▮▮▮▮▮▮▮ sold by the Plaintiff, despite being aware that they lack authorization to use the Plaintiff Mark.

53. The overall impact of the Defendants' actions will likely confuse consumers during the initial interest phase, at the time of sale, and after the purchase. Consumers may believe that all goods offered for sale in the Defendants' individual seller stores through e-commerce are authentic products originating from, associated with, and approved by Plaintiff.

54. Defendants advertise their online marketplaces, including their counterfeit goods offered for sale, to the public through individual seller stores through e-commerce operating under Seller IDs.

55. While advertising their stores and products, Defendants misuse the Plaintiff Mark without Plaintiff's consent, acting unlawfully and improperly.

56. Most Defendants reportedly use similar advertising and marketing strategies as part of their counterfeiting scheme, which heavily relies on Plaintiff Mark's illegal use of counterfeits and infringements.

57. The Defendants specifically use counterfeits and infringements of the Plaintiff Mark to make their individual seller stores on online e-commerce platforms appear more relevant and appealing to consumers searching for the Plaintiff's products and those of its competitors.

58. Through their actions, the Defendants help establish and sustain an illegal marketplace in the e-commerce space that operates alongside the legitimate market for the Plaintiff's authentic goods.

59. The Defendants consistently harm the Plaintiff and consumers by (a) preventing the Plaintiff and others from fairly competing for visibility in search engine results, reducing the online presence of the Plaintiff's genuine goods; (b) diminishing the goodwill associated with the Plaintiff; and (c) increasing the Plaintiff's marketing costs and efforts to educate consumers online.

60. Defendants simultaneously engage in counterfeiting and infringement, targeting consumers in a way that causes collective harm in this district and across the United States.

61. As a result, Defendants defraud Plaintiff and the consuming public for Defendants' own benefit.

62. Defendants use the Plaintiff Mark—including promoting, reproducing, distributing, selling, and offering their Counterfeit Goods—without the Plaintiff's consent or authorization.

63. Defendants knowingly and intentionally engage in the illegal counterfeiting and infringing activities described above, or they do so with reckless disregard for Plaintiff's licensed trademarks, aiming to profit from Plaintiff's goodwill and reputation.

64. If the Court does not issue a preliminary and permanent injunction against the Defendants' intentional counterfeiting and infringement, both Plaintiff and consumers will continue to suffer economic harm.

65. Defendants' infringing activities cause consumers confusion, deception, and misleading before, during, and after the time of purchase.

66. Defendants' wrongful actions create a false impression that misleads customers, the public, and the trade into believing a connection exists between the Plaintiff's genuine goods and the Defendants' Counterfeit Goods, even though no such connection exists.

67. Defendants use their payment and financial accounts, including those listed in Schedule "A," to accept and deposit profits from counterfeiting, infringement, and unfair competition related to their Seller IDs in e-commerce. Defendants will likely transfer or hide their assets to evade any monetary judgment awarded to the Plaintiff.

68. Plaintiff continues suffering irreparable injury and substantial damages due to Defendants' unauthorized and infringing activities of using Plaintiff's Mark.

69. If the Court does not issue a preliminary and permanent injunction against the Defendants' counterfeiting, infringement, and unfair competition, the Plaintiff and consumers will continue to suffer harm.

70. Plaintiff suffers harm directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, and sale of their Counterfeit Goods.

71. Defendants sold and continue to sell infringing products in competition directly with Plaintiff's genuine products.

72. Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use the Plaintiff Mark.

73. Plaintiff has no adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

74. Plaintiff incorporates the allegations of paragraphs 1 through 74 of this complaint as if fully set forth herein.

75. This is a lawsuit for trademark counterfeiting and infringement against the Defendants for their use of counterfeit and confusingly similar imitations of the Plaintiff Mark in commerce related to the promotion, advertisement, distribution, and sale of Counterfeit Goods.

76. Defendants promote, advertise, sell, offer for sale, and distribute goods that feature counterfeits and infringements of the Plaintiff Mark.

77. Defendants repeatedly infringe the Plaintiff Mark and encourage others to use it to advertise, promote, sell, and offer counterfeit and infringing goods.

78. Defendants' simultaneous counterfeiting and infringement create confusion, mistakes, and deception among industry members and consumers about the origin and quality of their Counterfeit Goods.

79. Defendants' illegal actions have caused ongoing, unmeasurable harm to the Plaintiff and unjustly enriched themselves with profits at the Plaintiff's expense.

80. Defendants' illegal actions described above amount to counterfeiting and infringement of the Plaintiff Mark, violating the Plaintiff's licensed rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

81. Plaintiff has suffered and will continue to suffer irreparable harm and damages from Defendants' activities unless the Court issues a preliminary and permanent injunction against them.

82. If this Court does not preliminarily and permanently enjoin Defendants, Defendants will continue to profit from their illegal activities wrongfully.

## COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

83. Plaintiff incorporates the allegations of paragraphs 1 through 74 of this Complaint as if fully set forth herein.

84. Based on available information, the Defendants have extensively advertised and sold their Counterfeit Goods featuring copies of the Plaintiff Mark across the United States through e-commerce platforms, including Amazon.com, AliExpress.us, Ebay.com, Shein.com, Temu.com, Wish.com, and Walmart.com.

85. Defendants' counterfeit goods, which feature copies of the Plaintiff Mark, appear almost identical to the Plaintiff's authentic products.

86. Defendants' Counterfeit Goods vastly differ in quality from Plaintiff's goods, as Defendants' goods are of much lower quality.

87. Defendants' activities continue to distort the public regarding the origin or sponsorship of their Counterfeit Goods.

88. Defendants use false designations of origin, misleading descriptions, and representations in their advertising, sales, and offers of their Counterfeit Goods. This includes words, symbols, and trade dress that falsely describe their products, knowingly allowing these goods to enter the market, which harms the Plaintiff.

89. Defendants authorize infringing uses of the Plaintiff Mark when promoting counterfeit and infringing branded goods.

90. Defendants misled consumers by claiming that the Counterfeit Goods they advertised and sold were authentic, non-infringing products.

91. Defendants unfairly compete with Plaintiff and others by using counterfeits and infringements to gain visibility in search engine and social media results. This action robs the Plaintiff of essential marketing opportunities and reduces the visibility of the Plaintiff's authentic products online and on social media platforms.

92. Defendants' actions violate Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

93. Plaintiff has no adequate remedy at law and suffers indivisible injury and damage caused by the Defendants' conduct.

94. Absent an entry of an injunction by this Court, Defendants will continue to benefit from Plaintiff wrongfully, and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation and monetary damages.

## COUNT III – COMMON LAW UNFAIR COMPETITON

95. Plaintiff incorporates the allegations of paragraphs 1 through 74 of this Complaint as if fully set forth herein.

96. This lawsuit is against the Defendants for promoting, advertising, distributing, selling, or offering goods that bear marks nearly identical to the Plaintiff Mark, violating Florida's common law on unfair competition. Defendants' activities complained of herein constitute unfair methods of competition.

97. Specifically, the Defendants promote, advertise, sell, offer for sale, and distribute goods that use or display counterfeits and infringements of the Plaintiff Mark.

98. Defendants use counterfeits and infringements of Plaintiff Mark to unfairly compete with Plaintiff and others for (a) visibility in search engine and social media results across various search terms and (b) overall visibility on the Internet.

99. Defendants' infringing activities cause confusion, mistake, and deception among trade members and the general consuming public regarding the origin and quality of Defendants' individual seller stores.

100. Plaintiff has no adequate remedy at law and suffers irreparable injury and damages due to Defendants' actions.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

101. Plaintiff incorporates the allegations of paragraphs 1 through 74 of this Complaint if fully set forth herein.

102. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing the Plaintiff mark.

103. Plaintiff owns all common law rights in and to the Plaintiff Mark.

104. Defendants, upon information and belief, promote and otherwise advertise, distribute, offer for sale, and sell goods bearing Plaintiff Mark.

105. Defendants' infringing activities cause confusion, mistake, and deception among trade members and the general consuming public regarding the origin and quality of Defendants' Counterfeit Goods bearing Mark.

106. Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury because of the Defendants' actions.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

(i) Grant temporary, preliminary, and permanent injunctions under 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 to prevent the Defendants, along with their agents, employees, and anyone working with them, from manufacturing, importing, advertising, promoting, distributing, selling, or offering Counterfeit Goods. This injunction should also prohibit them from infringing, counterfeiting, or diluting the Plaintiff Mark, using the Plaintiff Mark or any similar marks with unauthorized goods, and employing any logos, trade names, or trademarks that falsely advertise

    their goods or services as being sponsored, authorized, endorsed, or associated with the Plaintiff. Furthermore, the Defendants should be barred from misrepresenting their connection to the Plaintiff, which could mislead consumers into believing their goods or services are endorsed or approved by the Plaintiff. They should not use any reproduction, counterfeit, or imitation of the Plaintiff Mark in promoting or selling their goods, nor affix false descriptions or representations that could confuse consumers about their goods being associated with the Plaintiff. Additionally, the Defendants must refrain from engaging in search engine optimization strategies that incorporate imitations of the Plaintiff's name or trademarks and from competing unfairly with the Plaintiff.

(ii) Issue a Temporary Restraining Order, along with preliminary and permanent injunctions under 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority. This will prohibit the Defendants and any third parties with actual notice of the injunction from participating in or providing financial or technical support to the Defendants in connection with the sale and distribution of non-genuine goods that bear or use counterfeits of the Plaintiff Mark. Additionally, the Court should order, upon the Plaintiff's request, that Amazon.com, Temu.com, Etsy.com, Alibaba.com, AliExpress.us, Wish.com, Ebay.com, Shein.com, and Walmart.com operators or administrators, who are notified of the injunction, disable or stop facilitating access to the Seller IDs and any other seller names controlled by the Defendants that are used to market, offer for sale, or sell goods that infringe on the Plaintiff Mark.

(iii) Issue an Order under 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that requires any messaging service, along with Amazon.com, Temu.com,

        Etsy.com, Alibaba.com, AliExpress.us, Wish.com, Ebay.com, Shein.com, and Walmart.com operators, administrators, registrars, and top-level domain (TLD) registries, to identify any email addresses linked to the Defendants' Seller IDs upon the Plaintiff's request and after receiving notice of the Court's injunction.

(iv)  Issue an Order under 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that directs Amazon.com, Temu.com, Etsy.com, Alibaba.com, AliExpress.us, Wish.com, Ebay.com, Shein.com, and Walmart.com operators and administrators upon the Plaintiff's request and after receiving notice of the Court's injunction, to permanently remove all listings and images of goods that bear or use counterfeits or infringements of the Plaintiff Marks from various platforms, including direct, group, seller product management, vendor product management, and brand registry platforms. This includes listings specified in Schedule "A" and any related listings associated with Defendants' Seller IDs or any other aliases used to promote or sell counterfeit goods.

(v)  Issue an Order under 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that directs the operators and administrators of Amazon.com, Temu.com, AliExpress.us, Wish.com, Ebay.com, Shein.com, and Walmart.com, upon the Plaintiff's request and after receiving notice of the Court's injunction, to immediately stop fulfilling and secure all goods from each Defendant that bear or use the Plaintiff Mark in their inventory or control, and to return those goods to the Plaintiff.

(vi)  Issue an Order that requires Defendants to clarify any misleading impressions the public may have about their products' nature, characteristics, or qualities. This includes placing corrective advertising and providing written notice to the public.

(vii) Issue an Order requiring Defendants to pay Plaintiff all profits and damages from their trademark counterfeiting, infringement, and unfair competition. The award should be tripled under 15 U.S.C. § 1117, or, at Plaintiff's choice regarding Count I, Plaintiff should receive statutory damages from each Defendant, with amounts reaching up to two million dollars ($2,000,000.00) for each counterfeit trademark used and product sold, as specified by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

(viii) Grant an award to Plaintiff for costs, reasonable attorney's fees, and investigative fees related to this action, as outlined in 15 U.S.C. § 1117 (a) and (b), including expenses for corrective advertising.

(ix) Issue an order that, upon Plaintiff's request, requires Defendants and all related financial institutions, payment processors, banks, escrow services, and e-commerce platforms (including Amazon.com, Temu.com, Etsy.com, AliExpress.us, Wish.com, Ebay.com, Shein.com, and Walmart.com) to identify and freeze all funds—up to the total amount of the judgment—in all accounts linked to the Seller IDs or any other seller names used by Defendants, both now and in the future. This includes any related accounts and those transferring funds into these accounts, with the funds remaining frozen until they are paid to Plaintiff as part of the monetary judgment.

(x) Issue an award of pre-judgment interest on the judgment amount.

(xi) Issue an Order for any further relief as the Court may deem proper.

Dated: December 12, 2024

Respectfully submitted,

**HEITNER LEGAL, P.L.L.C.**
Attorney for Plaintiff
215 Hendricks Isle
Fort Lauderdale, FL 33301
Telephone: (954)-558-6999
Email: darren@heitnerlegal.com


By:*/s/ Darren Heitner*
Darren Heitner, Esq.
Florida Bar No. 85956